IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
September 11, 2012 Session

## STATE OF TENNESSEE v. REGINALD W. DAVIS

**Appeal from the Circuit Court for Montgomery County**
**No. 40800969     Michael R. Jones, Judge**

**No. M2011-02075-CCA-R3-CD - Filed November 16, 2012**

The defendant, Reginald W. Davis, was convicted by a Montgomery County jury of aggravated burglary, theft under $500, three counts of especially aggravated kidnapping, aggravated robbery, and possession of a firearm during the commission of a dangerous felony and was sentenced by the trial court to an effective term of thirty-seven years in the Department of Correction. In a timely appeal to this court, he argues that his due process rights were violated by his especially aggravated kidnapping convictions, which were incidental to his aggravated burglary and aggravated robbery convictions. Following our review, we affirm the convictions for aggravated burglary, theft under $500, aggravated robbery, and possession of a firearm during the commission of a dangerous felony, but we reverse the especially aggravated kidnapping convictions and remand for a new trial on those counts of the indictment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed in Part, Reversed in Part and Remanded for New Trial**

ALAN E. GLENN, J., delivered the opinion of the Court, in which JERRY L. SMITH and JAMES CURWOOD WITT, JR., JJ., joined.

Hugh R. Poland, Jr., Clarksville, Tennessee, for the appellant, Reginald W. Davis.

Robert E. Cooper, Jr., Attorney General and Reporter; Cameron L. Hyder, Assistant Attorney General; John Wesley Carney, Jr., District Attorney General; and Kimberly S. Lund, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

# FACTS

This case arises out of the defendant's participation with at least two juveniles and an adult, Willie Reed, Jr., in a May 25, 2008 home invasion in Clarksville that involved three victims: Raymond Bell, Jr.; Bell's sister, Shannon Davis; and Bell's friend, Brian Mockoski. The Montgomery County Grand Jury subsequently returned an indictment charging the defendant and Reed with aggravated burglary, aggravated robbery, three counts of especially aggravated kidnapping, theft over $1000, and possession of a firearm during the commission of a felony. The theft over $1000 count of the indictment, however, was reduced to theft under $500 by the trial court at the conclusion of the State's proof based on the State's failure to establish the value of the stolen property.

The State's first witness at the defendant's and Reed's joint trial was Raymond Bell, Jr., who testified that on May 25, 2008, he was at his home visiting with his friend, Brian Mockoski, in his downstairs bedroom when the home's alarm beeped to indicate that a door had been opened. When he went upstairs to check, he saw a man wearing a red bandana over his face and armed with a nine millimeter pistol just outside the open front door. Bell testified that the gunman, whom he later identified as the defendant, entered his home first but was quickly followed by at least three other men, who were also wearing red bandanas over their faces. He said that the defendant ordered him to the floor and then repeatedly struck him in the head and arms with his weapon. At some point, Mockoski came upstairs but was stopped by the men in the kitchen. Bell testified that the men dragged him into the kitchen, where he witnessed Mockoski getting hit.

Bell further testified that he was lying on the kitchen floor as directed when his sister came home and entered the house through the kitchen door, despite the fact that he tried to prevent her from doing so by blocking the entry with a trash can. He said the men "pointed the guns at her and told her to get down," and he jumped up to protect her but was "hit back to the ground." As he and his sister were lying on the floor, he saw one of the men strike his sister in the back with a chair. Bell stated that the extent of the intruders' conversation with him and his sister and friend was to order them to stay on the floor and to ask where the home's safe was located. He later explained that they used to have a safe in their home but that it had been stolen approximately six months earlier. He said the items taken in the burglary were a television from his mother's bedroom and a Play Station 3 from the living room.

Brian Mockoski testified that he came upstairs from Bell's bedroom to see Bell in the living room "getting jumped by two people" and hit in the face with a pistol. He said he tried to help his friend but was stopped in the kitchen by two other people who jumped him from behind and hit him in the back of the head with a computer screen. In all, he saw four men

-2-

wearing red bandanas and a fifth man out of the corner of his eye. He stated that he was struck three to four times in the head, kicked in the face, stomped on his shoulders, and ended up with a "pistol impression" on his right hand. He testified that one of the men took his wallet from his back pocket. He said that Bell's sister entered the home through the back door while he was being beaten and robbed, but he was unable to see what happened to her.

Shannon Davis testified that when she arrived home she had to push against the back kitchen door to enter the house because the door was blocked by the trash can. As she entered, she saw, simultaneously, a gun in her face and her bleeding brother standing on the other side of the kitchen yelling, "Get away from my sister, leave her alone, get out of my house." She also saw Brian Mockoski lying motionless on the floor with his eyes closed. Davis said that the gunman, whom she identified as the defendant, hit her brother in the face with his gun while someone else grabbed her from behind and closed the door. The defendant then pointed the gun at her and ordered her onto the floor. She complied and then heard a loud noise and felt a burning pain in her back. After hearing more noise, she looked up and saw that none of the intruders were in the kitchen, so she got up and started into her mother's bedroom, which was located off the kitchen. She saw one of the intruders in there, however, so she "tiptoed upstairs and locked [herself] in the bathroom and called 911."

None of the victims provided any estimate as to the length of time the intruders remained in the house.

A number of law enforcement officers testified, including one who described the home as "torn up," with furniture and "everything tossed everywhere[,]" and others who described how the defendant, Reed, and two juvenile males were arrested a short distance from the crime scene in a Ford Explorer. Inside the vehicle, officers found red bandanas, latex gloves, and the television and Play Station that had been taken from the home. They also found Mockoski's wallet in the pocket of one of the juveniles named Larry Smith, and a nine millimeter black and silver semi-automatic pistol in the defendant's waistband.

The defendant acknowledged his participation in the home invasion and burglary but denied that Reed had any role other than to give him and his juvenile companions a ride from the crime scene. The defendant said that he and his companions had been drinking and smoking marijuana, that he was "lit," and that the crimes occurred "all spur of the moment and half-assed," after someone in their group mentioned that there was a safe in the home. He stated that he was forced to hit Bell because Bell grabbed for his gun. He claimed that he was not really interested in the property in the home and that it was "the juveniles" who were running around trying to gather valuables. The defendant testified that he decided it was time to leave approximately one to two minutes after one of the juveniles struck Davis in the back with a chair:

I don't really know what made us decide to leave at the – at what time or when. But I just – it felt – you just know when it's time to leave. There's not really, okay, a little time table I'm going to stay here five minutes, and then after five minutes, boom, go to extraction point A, get in the vehicle and dip out. You know what I'm saying, that was just – I felt like it was going – as soon as I think it – when Shannon, Ms. Davis, got hit with the chair. I say probably a minute or two after she got hit I walked out the back door, and then, yeah, man, let's get out –let's get up out of here. And that's when Willie [Reed] came up with the truck, went over there, boom, hopped in, everybody hopped in, got out.

Willie Reed, Jr., who claimed he knew nothing beforehand about any burglary or robbery, testified that at some point on the night of May 25, he received a call from the juvenile Smith, who gave him directions to the victims' house and asked him to come pick up him and his companions. He said he left two or three minutes later, parked on the street in front of the house, and called Smith to let him know he had arrived. Three to five minutes later, Smith came out of the house with the defendant, "Walt," and "Louis" and got into Reed's vehicle after "putting the stuff" in the trunk of the vehicle. Reed acknowledged that he knew by that point that "something was wrong." He said they were stopped by the police approximately three to five minutes later.

Following deliberations, the jury convicted the defendant of all the charged offenses. The jury acquitted Reed of the especially aggravated kidnapping, aggravated burglary, and possession of a firearm counts but convicted him of theft under $500 as charged and of theft under $500 as a lesser-included offense of the aggravated robbery count of the indictment.

Thereafter, the defendant filed a timely notice of appeal to this court in which he contends that his especially aggravated kidnapping convictions violate due process because his confinement of the victims did not exceed that necessary to accomplish the accompanying felonies of aggravated burglary and aggravated robbery.

## ANALYSIS

As an initial matter, we note that although the defendant raised a generic sufficiency of the evidence issue in his motion for new trial, he did not raise the specific due process issue or argue it at the hearing on his motion for new trial. Failure to raise an issue in the motion for new trial ordinarily results in waiver of the issue on appeal. See Tenn. R. App. P. 3(e) (stating that "in all cases tried by a jury, no issue presented for review shall be predicated upon error in . . . jury instructions granted or refused, . . . or other ground upon which a new trial is sought, unless the same was specifically stated in a motion for a new

trial; otherwise such issues will be treated as waived"). We may, however, take notice of an error affecting a substantial right of the defendant, even if not raised at trial or in the motion for new trial, if the error more probably than not affected the judgment or would result in prejudice to the judicial process. Tenn. R. App. P. 36(b).

In order for us to find plain error, "(a) the record must clearly establish what occurred in the trial court; (b) a clear and unequivocal rule of law must have been breached; (c) a substantial right of the accused must have been adversely affected; (d) the accused did not waive the issue for tactical reasons; and (e) consideration of the error is 'necessary to do substantial justice.'" State v. Smith, 24 S.W.3d 274, 282 (Tenn. 2000) (quoting State v. Adkisson, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994)). Appellate review of an issue under the doctrine of plain error "should be limited to errors that had an unfair prejudicial impact which undermined the fundamental fairness of the trial." Adkisson, 899 S.W.2d at 642. We conclude that a plain error analysis of the issue is appropriate in this case.

For the purposes of this case, especially aggravated kidnapping is "false imprisonment, as defined in [Tenn. Code Ann.] § 39-13-302: (1) [a]ccomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon[.]" Tenn. Code Ann. § 39-13-305(a)(1) (2010). "A person commits the offense of false imprisonment who knowingly removes or confines another unlawfully so as to interfere substantially with the other's liberty." Id. § 39-13-302(a).

The defendant cites State v. White, 362 S.W.3d 559 (Tenn. 2012), to argue that his especially aggravated kidnapping convictions violate his due process rights because the evidence is subject to different interpretations with respect to whether his removal or confinement of the victims exceeded that necessary to accomplish the accompanying felonies of aggravated burglary and aggravated robbery. The State disagrees, arguing that the evidence was legally sufficient for the jury to convict the defendant of the separate offenses, despite the fact that it was not provided with a detailed definition of "substantial interference," because the trial court issued the standard instructions for the offenses and the elements of aggravated robbery and aggravated burglary do not include the restraint, removal, or confinement that occurred in this case.

In the White opinion, our supreme court overruled "[State v.] Anthony [, 817 S.W.2d 299 (Tenn. 1991)] and the entire line of cases including a separate due process analysis in appellate review" of kidnapping convictions that are accompanied by a separate felony. 362 S.W.3d at 578. The court concluded that our legislature did not intend for the kidnapping statutes to apply to instances in which the removal or confinement of a victim is essentially incidental to an accompanying felony, such as rape or robbery, and that the inquiry "is a question for the jury after appropriate instructions, which appellate courts review under the

sufficiency of the evidence standard as the due process safeguard." Id. at 562. The court elaborated as to what constitutes appropriate instructions to the jury:

> Under the standard we adopt today, trial courts have the obligation to provide clear guidance to the jury with regard to statutory language. Specifically, trial courts must ensure that juries return kidnapping convictions only in those instances in which the victim's removal or confinement exceeds that which is necessary to accomplish the accompanying felony. Instructions should be designed to effectuate the intent of the General Assembly to criminalize only those instances in which the removal or confinement of a victim is independently significant from an accompanying felony, such as rape or robbery. When jurors are called upon to determine whether the State has proven beyond a reasonable doubt the elements of kidnapping, aggravated kidnapping, or especially aggravated kidnapping, trial courts should specifically require a determination of whether the removal or confinement is, in essence, incidental to the accompanying felony or, in the alternative, is significant enough, standing alone, to support a conviction. In our view, an instruction of this nature is necessary in order to assure that juries properly afford constitutional due process protections to those on trial for kidnapping and an accompanying felony.

Id. at 578. The court emphasized that it was not creating a new standard for kidnapping but instead was "merely providing definition for the element of the offense requiring that the removal or confinement constitute a substantial interference with the victim's liberty[,]" and that its ruling in the case did not, thus, "articulate a new rule of constitutional law or require retroactive application." Id.

The defendant in the White case hid inside a restaurant at closing, approached a store manager from behind as she was in the women's restroom, knocked her to her knees, removed a set of keys from her arm, and ordered her to remain in the restroom. Id. at 562. The defendant then returned to the restroom and forced the manager at gunpoint to accompany him to the employee area where another restaurant employee was attempting to open the store safe. Id. After the manager opened the safe, the defendant took a computer monitor, cell phones, and cash, "removed all of the telephones and directed the two women to lie down on the floor and wait eight or nine minutes." Id. at 562-63.

Our supreme court concluded that such proof could be interpreted in different ways and that whether the removal or confinement of the victim constituted a substantial interference with her liberty was a question of fact for the jury to resolve. Id. at 579. Because the jury had been given only the pattern jury instructions on the elements of the

offenses, which did not include an instruction that substantial interference with the victim's liberty requires a finding that the victim's removal or confinement was not essentially incidental to the accompanying felony, the court concluded that the defendant was entitled to a new trial on the especially aggravated kidnapping charge. Id.

To provide guidance, our supreme court set forth the following instruction to be issued by trial courts until an appropriate pattern jury instruction is developed:

> To establish whether the defendant's removal or confinement of the victim constituted a substantial interference with his or her liberty, the State must prove that the removal or confinement was to a greater degree than that necessary to commit the offense of [insert offense], which is the other offense charged in this case. In making this determination, you may consider all the relevant facts and circumstances of the case, including, but not limited to, the following factors:
>
> - the nature and duration of the victim's removal or confinement by the defendant;
>
> - whether the removal or confinement occurred during the commission of the separate offense;
>
> - whether the interference with the victim's liberty was inherent in the nature of the separate offense;
>
> - whether the removal or confinement prevented the victim from summoning assistance, although the defendant need not have succeeded in preventing the victim from doing so;
>
> - whether the removal or confinement reduced the defendant's risk of detection, although the defendant need not have succeeded in this objective; and
>
> - whether the removal or confinement created a significant danger or increased the victim's risk of harm independent of that posed by the separate offense.

Id. at 580-81.

-7-

The jury instructions in the case at bar are not included in the record on appeal. The State, however, concedes that the jury was provided only the pattern jury instructions on the offenses. Based on our review, we conclude that the proof in this case, similar to the proof in <u>White</u>, is subject to different interpretations as to whether the defendant's confinement or removal of the victims was essentially incidental to the accompanying felonies of aggravated burglary and aggravated robbery or significant enough, standing alone, to support his convictions for especially aggravated kidnapping. Because the evidence is subject to differing interpretations, and the jury was not instructed on the meaning of substantial interference, we conclude that the defendant's especially aggravated kidnapping convictions must be reversed and the case remanded for a new trial on those counts of the indictment.

## **CONCLUSION**

Based on the foregoing authorities and reasoning, we reverse the defendant's especially aggravated kidnapping convictions and remand for a new trial as to those judgments. The remaining judgments are affirmed.


_____
ALAN E. GLENN, JUDGE